Talasi B. Brooks (Idaho # 9712)
Western Watersheds Project
P.O. Box 2863
Boise, ID 83701
(208) 336-9077
tbrooks@westernwatersheds.org

John Persell (Utah # 17298) *Pro hac vice admission pending*
Western Watersheds Project
P.O. Box 1770
Hailey, ID 83333
(503) 896-6472
jpersell@westernwatersheds.org

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT,** | Case No. 1:21-cv-219 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **NATIONAL PARK SERVICE,** | |
| Defendant. | |

## INTRODUCTION

1.     This is an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* to compel Defendant the National Park Service (NPS) to produce records that Plaintiff Western Watersheds Project requested in FOIA requests between October 6, 2018, and December 22, 2020, concerning information regarding the management of livestock grazing and associated infrastructure in three units of the National Park System: Capitol Reef National Park, the Glen Canyon National Recreation Area, and Dinosaur National Monument.

1

2.      Western Watersheds Project (WWP), an Idaho not-for-profit corporation,

requested the records that are the subject of this lawsuit to further its objective of educating the

public about Defendant's public land management decisions.

3.      In this civil action, WWP seeks declaratory and injunctive relief that NPS has

violated FOIA and an order to provide all responsive records within 90 days. Specifically, WWP

seeks a Court order (1) declaring that NPS's failure to provide adequate determinations to

WWP's FOIA requests, failure to conduct adequate searches for records responsive to WWP's

requests, and improper withholding of responsive non-exempt records violate FOIA; (2)

declaring that NPS has engaged in a pattern, practice, or policy of violating the requirements of

FOIA; (3) ordering NPS to produce the requested records within 90 days of the Court's order; (4)

enjoining NPS from continuing to withhold non-exempt records responsive to WWP's requests;

(5) enjoining NPS from continuing to engage in its pattern, practice, or policy of violating FOIA;

(6) awarding WWP its reasonable costs, litigation expenses, and attorneys' fees incurred in

prosecuting this action; and (7) granting such additional relief as WWP may request.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)

(FOIA), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory judgment), and 28

U.S.C. § 2202 (further relief). This action arises under the laws of the United States, including

FOIA and the Declaratory Judgment Act, 28 U.S.C. § 2201.

5.      Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §

1391(e)(1) because Plaintiff WWP's principal place of business is in this district.

6.      Because NPS has failed to comply with the applicable time requirements of

FOIA, WWP is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. §

552(a)(6)(C)(i) and is now entitled to judicial relief enjoining NPS from continuing to withhold agency records and ordering the production of records improperly withheld under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202.

**PARTIES**

7.     Plaintiff WWP is an Idaho non-profit membership organization dedicated to protecting and restoring watersheds and wildlife in the American West through education, public policy initiatives, and legal advocacy. WWP has over 12,000 members and supporters, including many members who live in Idaho. WWP is headquartered in Hailey, Idaho, and has staff in Boise, Idaho, as well as in other western states.

8.     WWP's mission is to protect and restore western watersheds and wildlife through education, public policy initiatives and legal advocacy. WWP is active in seeking to protect and improve the public lands, wildlife, and other natural resources and ecological values of western watersheds, particularly by addressing impacts caused by domestic livestock grazing. WWP has long-standing concerns about impacts of NPS's grazing management on the environment.

9.     To further its mission, WWP often requests information regarding federal programs and activities through FOIA. WWP then compiles and analyzes the information it obtains through the requests and disseminates it to the public by: (1) presenting the material to its members and supporters, as well as members of other state and national conservation organizations, through its newsletter and email alerts; (2) presenting the materials at national and regional conferences; (3) participating in other public forums, such as local government hearings; (4) issuing press releases and presenting the information to national, regional and local media; (5) posting the information (in a compiled and more readily understandable form) on WWP's internet web site, which has over 2,000 views each month; and (6) periodically posting

information in a compiled and more readily understandable form to a heavily trafficked weblog, The Wildlife News (http://www.thewildlifenews.com), which receives on average over 7,000 visits each week. The records requested in the FOIA requests at issue here will help WWP inform and educate its members and the public about NPS's grazing management and its potential environmental effects.

10.     WWP and its staff and members are directly injured by NPS's failure to comply with the statutory requirements of FOIA, and a favorable outcome of this litigation will redress that injury. WWP brings this suit on behalf of itself, its staff, and its members.

11.     Defendant the NATIONAL PARK SERVICE (NPS) is an independent agency of the U.S. Department of Interior (DOI), and has possession of and control over the records WWP seeks. As a federal agency, NPS is obligated to comply with the mandatory requirements of FOIA and is sued in this action in connection with its failure to comply with those statutory duties.

## STATUTORY BACKGROUND

12.     FOIA was enacted "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S. Rep. No. 813, at 3 (1st Sess. 1965). As the Supreme Court has affirmed, "Congress believed that this philosophy, put into practice, would help 'ensure an informed citizenry, vital to the functioning of a democratic society.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *Nat'l Labor Rel. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Accordingly, "the basic purpose" of FOIA is "to open agency action to the light of public scrutiny." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) (quoting *U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976)).

4

### Agency Requirements under FOIA

13.     Ordinarily, FOIA requires that federal agencies shall determine within twenty

(20) working days after receiving a request whether to comply with it. 5 U.S.C. § 552(a)(6)(A);

43 C.F.R. § 2.16(a).

14.     An agency may toll the 20-day period once to either seek more information from

the requester or "to clarify with the requester issues regarding fee assessment." 5 U.S.C. §§

552(a)(6)(A)(ii)(I) & (II).

15.     In determining whether to comply with a request, the agency must first gather and

review the requested records. *Citizens for Responsibility and Ethics in Wash. v. Federal Election

Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) (*CREW*).

16.     Then, the agency "must determine whether to comply with a request—that is,

whether a requester will receive all the documents the requester seeks. It is not enough that,

within the relevant time period, the agency simply decides to later decide." *CREW*, 711 F.3d at

186.

17.     Within the relevant time period, the agency must notify the requester of the scope

of the records that the agency will produce, the scope of the records that the agency plans to

withhold under any FOIA exemptions, the reasons for any withholdings, and of the requester's

right to appeal to the head of the agency any adverse determination. *Id.*; 5 U.S.C. §

552(a)(6)(A)(i). "The requirement that the agency notify the requester about administrative

appeal rights [] indicates that the 'determination' must be substantive, not just a statement of a

future intent to produce non-exempt responsive documents." *CREW*, 711 F.3d at 186.

18.     FOIA provides that "[u]pon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request." 5 U.S.C. § 552(a)(6)(C)(i); *see also* 5 U.S.C. § 552(a)(3)(A).

19.     An untimely determination or response is a violation of FOIA, regardless of the final outcome of the request. *Gilmore v. U.S. Dept. of Energy*, 33 F. Supp. 2d 1184, 1188 (N.D. Cal. 1998); *Or. Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006).

20.     In specified unusual circumstances, the time limits prescribed in the statute may be extended by written notice to the requester "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). *See also* 43 C.F.R. § 2.19(a).

21.     No extension may exceed ten business days unless the agency: (1) provides written notice to the requester explaining the "unusual circumstances" requiring an extension; (2) establishes the date on which the agency expects to make the determination; and (3) gives the requester "an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(6)(B)(i) & (ii).

22.     DOI's FOIA regulations provide for four "processing tracks" based on the number of workdays needed to process the request: simple (1-5 days), normal (6-20 days), complex (21-60 days), and exceptional/voluminous (over 60 days). 43 C.F.R. § 2.15(c). However, the use of multi-track processing "does not alter the statutory deadline for a bureau to determine whether to comply" with a FOIA request. *Id*. § 2.15(f). A bureau is "any major component of the Department administering its own FOIA program," a definition that includes NPS. *Id.* § 2.70.

6

23.     DOI's FOIA regulations provide that if the processing time will extend beyond a total of 30 workdays, the bureau will give the requester a chance to modify the request or agree to an alternative time period for processing, and make available DOI's FOIA Public Liaison to assist in resolving any disputes between the requester and the bureau. *Id.* § 2.19(b). If the bureau extends the time limit and does not offer the requester an adequate response during that time period, the requester "may consider the request denied." *Id.* § 2.19(c).

24.     An agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Hamdan v. United States*, 797 F.3d 759, 770 (9th Cir. 2015) (citing *Lahr v. Nat'l Transp. Safety Br.*, 569 F.3d 964, 986 (9th Cir. 2009)).

25.     Under FOIA, "'search' means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D).

**Exhaustion of Administrative Remedies under FOIA**

26.     An administrative appeal is not required to exhaust administrative remedies when the agency fails to respond to a FOIA request. Administrative remedies are deemed exhausted when an agency fails to comply with applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i); *CREW*, 711 F.3d at 188; *Spannaus v. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987) (overruled on other grounds by *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020)).

27.     "To trigger the exhaustion requirement, an agency must make and communicate its 'determination' whether to comply with a FOIA request—and communicate 'the reasons therefor'—within 20 working days of receiving the request, or within 30 working days in 'unusual' circumstances." *CREW*, 711 F.3d at 182 (quoting 5 U.S.C. § 552(a)).

28.     To exhaust administrative remedies, a requester may administratively appeal an adverse determination, denial, or withholding of records. 5 U.S.C. § 552(a)(6)(A)(i)(III); 43 C.F.R. §§ 2.57, 2.58.

29.     An agency must make a determination with respect to an appeal within 20 workdays unless proper written notice is provided to the requester. 5 U.S.C. §§ 552(a)(6)(A)(ii), 552(a)(6)(B)(i) & (ii).

30.     If an agency fails to make a determination regarding an appeal within the relevant statutory time limits, a requester has constructively exhausted administrative remedies and may seek judicial review. 5 U.S.C. § 552(a)(6)(C)(i); *Spannaus v. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987) (overruled on other grounds by *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020)).

## FOIA Exemptions

31.     In general, an agency must produce all records that respond to a FOIA request. 5 U.S.C. § 552(a)(3)(A); *Milner v. U.S. Dep't of Navy*, 562 U.S. 562, 564 (2011).

32.     An agency may avoid disclosure of information responsive to a FOIA request only if the agency proves that the requested records fall within one of the nine enumerated exemptions to the general disclosure requirement. *See* 5 U.S.C. § 552(b)(1)–(9). FOIA requires an agency withholding information responsive to a FOIA request to provide the requester with "the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i).

33.     Consistent with encouraging disclosure, the exemptions under § 552(b) are discretionary, not mandatory. *Chrysler Corp. v. Brown*, 441 U.S. 281, 291 (1979).

34.     An agency bears the burden of proving that a requested record falls within one of the nine exemptions. *See Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir.

1992) ("Under FOIA, 'the burden is on the agency to sustain its action.'"); *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) ("The government has the burden to prove that a requested document falls within one of FOIA's exemptions.").

35.     When evaluating an agency's invocation of a FOIA exemption, courts "balance the public interest in disclosure against the interest Congress intended the exemption to protect." *U.S. Dep't of Defense v. Fed. Labor Rels. Auth.*, 510 U.S. 487, 495 (1994).

36.     "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." *Anderson*, 907 F.2d at 941. An agency may not simply redact entire records or pages if a small portion is subject to an exemption. *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("If a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions.") (quoting 5 U.S.C. § 552 (b)). "[T]he exemptions to the FOIA do not apply wholesale. An item of exempt information does not insulate from disclosure the entire file in which it is contained, or even the entire page on which it appears." *Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1466 (D.C. Cir. 1983).

37.     Pertinent here, under FOIA Exemption 4, an agency may withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).

38.     To properly invoke Exemption 4, an agency must present "evidence revealing (1) actual competition and (2) a likelihood of substantial competitive injury" to the person from whom the information was obtained. *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109,

1113 (9th Cir. 1994) (overruled on other grounds by *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)).

39. FOIA Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years of more before the date on which the records were requested." 5 U.S.C. § 552(b)(5).

40. Under Exemption 5, portions of records may be withheld only if they are both predecisional and deliberative. *Lahr*, 569 F.3d at 979 (citing *Assembly of Cal.*, 968 F.2d at 920).

41. FOIA Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

42. This Court has ruled that in balancing privacy and public interests, Exemption 6 did not support redaction of the names of livestock grazing and trailing permittees, because disclosure "would not constitute a clearly unwarranted invasion of personal privacy." *W. Watersheds Project v. Bureau of Land Mgmt.*, No. 09-cv-482-CWD, 2010 WL 3735710 at *12 (D. Idaho Sept. 13, 2010). Thus, an agency's "reliance on Exemption 6 for withholding [such] information is not justified." *Id.*; *see also Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 16 (D.D.C. 2014) (noting this Court's "finding that name, address, email, phone number, and other details about grazing permittee's permit allotments constituted a 'minimal,' but 'non-trivial privacy interest,' which was ultimately outweighed by the public interest in determining whether permits were properly issued.").

**U.S. District Court Jurisdiction under FOIA**

43.    A U.S. district court has jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

**STATEMENT OF FACTS**

44.    As described below, WWP currently has nine outstanding FOIA requests submitted to NPS between October of 2018 and December of 2020.

45.    NPS has failed to provide all non-exempt responsive records or otherwise meet its statutory obligations for these nine FOIA requests.

46.    NPS's failure to make requested records promptly available and its improper withholding of non-exempt material has repeatedly stymied WWP's efforts to better understand the agency's management of livestock and livestock-related impacts on NPS-managed lands and share that information with the public in furtherance of WWP's mission.

47.    In many instances, WWP's requests seek annual updates on the agency's range program or records regarding the implementation of recently adopted livestock management schemes in particular NPS units, as described in several of the requests outlined below.

48.    NPS's failure to provide responsive records or otherwise meet FOIA's time limits has prevented WWP from gaining a contemporaneous or nearly contemporaneous understanding of the agency's management of livestock and livestock-related impacts. This in turn has injured WWP's ability to share requested records and serve the public interest by shedding light on NPS's performance of its statutory duties.

49.     NPS's pattern, practice, or policy of repeatedly violating the requirements of FOIA demonstrate WWP will likely suffer the same harm from NPS in the future absent declaratory and injunctive relief.

50.     Although WWP has attempted to resolve these issues by working with NPS informally, those efforts have failed. NPS's repeated violations have thus forced WWP to seek judicial relief in order to carry out its mission and to be able to use FOIA as Congress intended to understand and disseminate information to the public about the agency's management of National Park System units.

**NPS FOIA Request NPS-2019-00057 / DOI-NPS-2019-000035**
**(Records Requested: Administrative Record for the Capitol Reef National Park**
**Livestock Grazing and Trailing Management Plan)**

51.     On or about October 6, 2018, Jonathan Ratner, WWP's State Director for Wyoming, Colorado, and Utah, properly submitted a FOIA request to NPS for materials contained in the administrative record and decision file for the Capitol Reef National Park Livestock Grazing and Trailing Management Plan.

52.     On October 11, 2018, NPS emailed Mr. Ratner with an acknowledgement of his request, and assigned it the tracking number NPS-2019-00057, which has been converted into tracking number DOI-NPS-2019-000035 in the foiaonline.gov tracking system. In its acknowledgement email, NPS indicated it "believed" the request fell in the "complex" category but may be moved to the "exceptional/voluminous" category if the agency discovered a large amount of potentially responsive records. NPS informed Mr. Ratner that he could narrow the scope of the request.

53.     In NPS's acknowledgement email, the agency indicated it expected to provide Mr. Ratner a determination for his request by November 7, 2018, with records responsive to the request provided around January 7, 2019.

54.     According to the foiaonline.gov tracking system, NPS also listed a "due date" for its response to WWP's request as November 7, 2018. Upon information and belief, the "due date" is the date by which NPS would have needed to render a timely determination or produce all responsive records to comply with FOIA's 20-day deadline.

55.     NPS failed to provide WWP with responsive records or a determination regarding this request within 20 business days or by November 7, 2018, resulting in the constructive denial of WWP's request.

56.     By March of 2019, NPS had still provided no determination or updated estimated completion date for this request.

57.     On March 14, 2019, WWP submitted an administrative appeal to NPS regarding the effective denial of its request indicated by NPS's failure to provide a determination or responsive records within the statutory timeline.

58.     To comply with FOIA and the 20-business-day decision deadline imposed by FOIA and applicable appeal resolution regulations at 5 U.S.C. § 552(a)(6)(A)(ii) and 43 C.F.R. § 2.62, the deadline for NPS to issue a final determination on WWP's appeal was April 11, 2019.

59.     NPS failed to acknowledge or make a determination regarding WWP's appeal by April 11, 2019.

60.     On April 17, 2019, NPS provided a partial response to WWP's request, providing 740 documents electronically. The letter accompanying the partial response indicated the agency continued to review responsive records, but did not indicate the scope of records NPS intended to

withhold in future releases, the reasons for any future withholdings, or WWP's right to appeal any adverse determination.

61.     In an October 2019 email exchange with NPS about WWP's outstanding FOIA requests, WWP learned that this request had been moved into the "exceptional/voluminous" category, but NPS never provided WWP any written notice explaining the "unusual circumstances" that warranted that shift.

62.     Since that time, no further records have been provided responsive to this request.

63.     In an email dated January 15, 2021, NPS indicated there remained 1,170 potentially responsive records to this request that still needed review.

64.     This request remains in the "Evaluation" phase, according to the foiaonline.gov tracking system.

65.     Upon information and belief, NPS has not completed its review of records responsive to this request.

66.     NPS has never informed WWP of whether it plans to fully comply with the request, whether it plans to withhold further records, the exemptions claimed to justify any withholdings, or how WWP may appeal an adverse determination.

67.     NPS has not made all records responsive to WWP's request—which was received in 2018—"promptly available" to WWP, because NPS still has not fully complied with the request more than two years later.

### NPS FOIA Request NPS-2019-00394 / DOI-NPS-2019-006809
### (Records Requested: Range Program Materials from
### Dinosaur National Monument)

68.     On or about January 1, 2019, Mr. Ratner properly submitted a FOIA request to NPS for materials regarding the range program within Dinosaur National Monument.

69.     It does not appear NPS provided Mr. Ratner an acknowledgement email for this request, but according to the foiaonline.gov tracking system, on or about January 28, 2019, NPS placed this FOIA request into the "exceptional/voluminous" category and assigned it the tracking number NPS-2019-00394, which has been converted into tracking number DOI-NPS-2019-006809.

70.     According to the foiaonline.gov tracking system, NPS listed a "due date" for its response to WWP's request as February 25, 2019. Upon information and belief, the "due date" is the date by which NPS would have needed to render a timely determination or produce all responsive records to comply with FOIA's 20-day deadline.

71.     NPS provided no written notice to WWP explaining the "unusual circumstances" that warranted the request's placement into the "exceptional/voluminous" category.

72.     NPS failed to provide WWP with responsive records or a determination regarding this request within 20 business days or by February 25, 2019, resulting in the constructive denial of WWP's request.

73.     On May 12, 2020, NPS provided what it deemed a "final response" to WWP's request, which consisted of 26 documents totaling 336 pages. The letter accompanying the release of records stated WWP's request was granted in full, but did not indicate WWP may appeal any adverse determination.

74.     Mr. Ratner reached out to NPS and a DOI FOIA appeals officer about his concerns with the "final response" to this request. The FOIA appeals officer facilitated a conference call between Mr. Ratner and NPS on June 1, 2020, which led to an agreement that NPS would continue its search for responsive records.

75.     This request appears as "Closed" in the foiaonline.gov tracking system, but according to the FOIA appeals officer, it has been reopened by NPS.

76.     On January 14, 2021, NPS provided another "partial release" of materials responsive to this request, which consisted of 210 documents totaling 310 pages. The letter accompanying this release of records stated WWP's request was "granted in part and denied in part," but did not explain whether any records were withheld, or the reasons for any withholdings. Again, the letter did not indicate WWP may appeal any adverse determination.

77.     According to email communications with NPS on January 15, 2021, the agency's search for and review of responsive records remains ongoing.

78.     Upon information and belief, NPS has not completed its search for or review of records responsive to this request.

79.     NPS has never informed WWP of whether it plans to fully comply with the request, whether it plans to withhold further records, the exemptions claimed to justify any withholdings, or how WWP may appeal an adverse determination.

80.     NPS has not made all records responsive to WWP's request "promptly available" to WWP, because NPS still has not fully complied with the request more than two years later.

**NPS FOIA Request NPS-2019-00408 / DOI-NPS-2019-000355**
**(Records Requested: 2018 Materials Regarding the**
**Range Program at Capitol Reef National Park**

81.     On or about January 1, 2019, Mr. Ratner properly submitted a FOIA request to NPS for materials regarding the range program in Capitol Reef National Park during calendar year 2018.

82.     It does not appear NPS provided Mr. Ratner an acknowledgement email for this request, but according to the foiaonline.gov tracking system, on or about January 28, 2019, NPS

16

placed this FOIA request into the "exceptional/voluminous" category and assigned it the tracking number NPS-2019-00408, which has been converted into tracking number DOI-NPS-2019-000355.

83.     According to the foiaonline.gov tracking system, NPS listed a due date for its response to WWP's request as February 25, 2019. Upon information and belief, the "due date" is the date by which NPS would have needed to render a timely determination or produce all responsive records to comply with FOIA's 20-day deadline.

84.     NPS provided no written notice to WWP explaining the "unusual circumstances" that warranted the request's placement into the "exceptional/voluminous" category.

85.     NPS failed to provide WWP with responsive records or a determination regarding this request within 20 business days or by February 25, 2019, resulting in the constructive denial of WWP's request.

86.     This request remains in the "Evaluation" phase, according to the foiaonline.gov tracking system.

87.     According to email communications with NPS on January 15, 2021, the agency has completed its search for responsive records, but its review of responsive records remains ongoing.

88.     Upon information and belief, NPS has not completed its review of records responsive to this request.

89.     NPS has released no records responsive to this request.

90.     NPS has never informed WWP of whether it plans to fully comply with the request, whether it plans to withhold records, the exemptions claimed to justify any withholdings, or how WWP may appeal any adverse determination.

91.     NPS has not made all records responsive to WWP's request "promptly available" to WWP, because NPS has not fully complied with the request more than two years later.

### NPS FOIA Request NPS-2019-00409 / DOI-NPS-2019-000304
### (Records Requested: Materials Regarding Range Infrastructure
### at Capitol Reef National Park)

92.     On or about December 27, 2018, Mr. Ratner properly submitted a FOIA request to NPS for materials related to range infrastructure within Capitol Reef National Park.

93.     It does not appear NPS provided Mr. Ratner an acknowledgement email for this request, but according to the foiaonline.gov tracking system, on or about January 28, 2019, NPS placed this FOIA request into the "exceptional/voluminous" category and assigned it the tracking number NPS-2019-00409, which has been converted into tracking number DOI-NPS-2019-000304.

94.     According to the foiaonline.gov tracking system, NPS listed a due date for its response to WWP's request as February 25, 2019. Upon information and belief, the "due date" is the date by which NPS would have needed to render a timely determination or produce all responsive records to comply with FOIA's 20-day deadline.

95.     NPS provided no written notice to WWP explaining the "unusual circumstances" that warranted the request's placement into the "exceptional/voluminous" category.

96.     NPS failed to provide WWP with responsive records or a determination regarding this request within 20 business days or by February 25, 2019, resulting in the constructive denial of WWP's request.

97.     This request remains in the "Evaluation" phase, according to the foiaonline.gov tracking system.

98.     According to email communications with NPS on January 15, 2021, the agency has completed its search for responsive records, but its review of responsive records remains ongoing.

99.     Upon information and belief, NPS has not completed its review of records responsive to this request.

100.    NPS has released no records responsive to this request.

101.    NPS has never informed WWP of whether it plans to fully comply with the request, whether it plans to withhold records, the exemptions claimed to justify any withholdings, or how WWP may appeal any adverse determination.

102.    NPS has not made all records responsive to WWP's request "promptly available" to WWP, because NPS has not fully complied with the request more than two years later.

**NPS FOIA Request NPS-2019-00750 / DOI-NPS-2019-006915**
**(Records Requested: Materials Regarding the Implementation of the**
**Capitol Reef National Park Livestock Grazing and Trailing Management Plan**

103.    On or about April 2, 2019, Mr. Ratner properly submitted a FOIA request to NPS for materials regarding the implementation of the Livestock Grazing and Management Plan for Capitol Reef National Park.

104.    On April 3, 2019, NPS emailed Mr. Ratner with an acknowledgement of his request, and assigned it the tracking number NPS-2019-00750, which has been converted into tracking number DOI-NPS-2019-006915 in the foiaonline.gov tracking system.

105.    Without explanation of any "unusual circumstances" warranting such placement, NPS also indicated the request fell in the "exceptional/voluminous" category.

106.    In NPS's acknowledgement email, the agency indicated WWP should expect a "response" to this request by June 26, 2019.

19

107.    According to the foiaonline.gov tracking system, NPS listed a "due date" for its response to WWP's request as April 30, 2019. Upon information and belief, the "due date" is the date by which NPS would have needed to render a timely determination or produce all responsive records to comply with FOIA's 20-day deadline.

108.    NPS failed to provide WWP with responsive records or a determination regarding this request within 20 business days or by April 30, 2019, or by June 26, 2019.

109.    Nearly a year later, on March 24, 2020, NPS provided WWP a "final response" to this request, granting the request in part, and denying the request in part. NPS provided 169 files totaling 585 pages, but withheld 17 pages under FOIA Exemptions 4 and 6.

110.    In its "final response" letter, NPS asserted that it withheld 12 pages responsive to this request under FOIA Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person [that] is privileged or confidential." *See* 5 U.S.C. § 552(b)(4).

111.    NPS stated that "[t]he withheld information is commercial or financial information relating to the contracting of labor and materials to carryout [sic] the range program monitoring services."

112.    NPS contended "the information at issue was required to be submitted to the government," and "is considered confidential <u>if</u> disclosure of it is likely to cause substantial harm to the competitive position of the person from whom the information was obtained, or harm the government's ability to obtain it in the future." (emphasis added). In a conclusory statement, NPS alleged, "[t]he proposal submitted contains individual unit costs, strategies and analyses by the submitter that is confidential."

113.     Upon invoking Exemption 4, NPS never presented evidence of actual competition in the market for contracting labor and materials to carry out monitoring services for the range program at Capitol Reef National Park, nor that disclosure of the withheld information was likely to cause a substantial competitive injury to the person from whom the withheld information was obtained.

114.     Also in its "final response" letter, NPS asserted that it withheld additional pages under FOIA Exemption 6, which allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6).

115.     NPS contended that in balancing the privacy interests of those affected by a disclosure and the public interest in shedding light on an agency's performance of its statutory duties, it determined privacy interests to be more substantial.

116.     NPS further stated that WWP had "not provided information that explains a relevant public interest under the FOIA in the disclosure of this personal information," despite WWP's inclusion of a full paragraph outlining the public interest served in its request letter.

117.     Upon review of the records released by NPS in response to this request, Mr. Ratner determined that the "personal information" withheld under Exemption 6 consisted of the names of livestock grazing and trailing permittees.

118.     On April 20, 2020, Mr. Ratner emailed a DOI FOIA appeals officer to express concern about the small number of responsive records—indicating an inadequate search on the part of NPS in light of the request's placement in the "exceptional/voluminous" category—as well as concerns about the withholding of material under Exemptions 4 and 6. Mr. Ratner pointed out to the FOIA appeals officer that DOI agencies' withholding of permittee names

under Exemption 6 had been already addressed before in other instances, and that NPS invoked

Exemption 4 "with dubious applicability."

119.    The FOIA appeals officer treated Mr. Ratner's email as an appeal of NPS's

response regarding request NPS-2019-00750, and on April 21, 2020, assigned it Appeal No.

2020-083.

120.    To comply with FOIA and the 20-business-day decision deadline imposed by

FOIA and applicable appeal resolution regulations at 5 U.S.C. § 552(a)(6)(A)(ii) and 43 C.F.R. §

2.62, the deadline for NPS to issue a final determination on WWP's appeal was May 19, 2020.

121.    In an email dated February 11, 2021, the FOIA appeals officer indicated Appeal

No. 2020-083 remained pending. However, NPS has never provided written notice of "unusual

circumstances" beyond a predictable agency workload that warranted a delay of nearly one year

in reaching a determination regarding WWP's appeal stemming from a request submitted over

two years ago. Because NPS did not make a final determination regarding WWP's appeal by

May 19, 2020, NPS constructively denied WWP's appeal.

122.    Since March 24, 2020, no further records have been provided responsive to this

request.

123.    In an email dated January 15, 2021, NPS indicated it had completed its search for

records responsive to this request, but its review of responsive records remains ongoing.

124.    Upon information and belief, NPS has not completed its review of records

responsive to this request.

125.    This request is listed as "Closed," according to the foiaonline.gov tracking

system, despite NPS's ongoing review of responsive records.

126. NPS has not updated WWP on whether it plans to further comply with the request, whether it plans to withhold further records, or the exemptions claimed to justify any further withholdings.

127. NPS never provided written notice to WWP explaining the "unusual circumstances" warranting the request's placement in the "exceptional/voluminous" category.

128. NPS has not made all records responsive to WWP's request "promptly available" to WWP, because NPS still has not fully complied with the request more than two years later.

129. Upon information and belief, NPS has not conducted an adequate search for responsive records to this request.

130. Upon information and belief, NPS improperly withheld materials responsive to this request under FOIA Exemption 4.

131. Upon information and belief, NPS improperly withheld materials responsive to this request under FOIA Exemption 6.

**NPS FOIA Request NPS-2020-00199 / DOI-NPS-2019-000306**
**(Records Requested: 2018 Materials Regarding the Range Program**
**at Glen Canyon National Recreation Area)**

132. On or about January 1, 2019, Mr. Ratner properly submitted a FOIA request to NPS for materials regarding the range program in Glen Canyon National Recreation Area during calendar year 2018.

133. NPS did not provide Mr. Ratner an acknowledgement email for this request, but according to the foiaonline.gov tracking system, NPS placed this FOIA request into the "exceptional/voluminous" category and assigned it the tracking number NPS-2020-00199, which has been converted into tracking number DOI-NPS-2019-000306.

134.    According to the foiaonline.gov tracking system, NPS listed a due date for its response to WWP's request as January 29, 2019. Upon information and belief, the "due date" is the date by which NPS would have needed to render a timely determination or produce all responsive records to comply with FOIA's 20-day deadline.

135.    NPS provided no written notice to WWP explaining the "unusual circumstances" warranting the request's placement in the "exceptional/voluminous" category.

136.     NPS failed to provide WWP with responsive records or a determination regarding this request within 20 business days or by January 29, 2019, resulting in the constructive denial of WWP's request.

137.    NPS has released no records responsive to this request.

138.    This request remains in the "Evaluation" phase, according to the foiaonline.gov tracking system.

139.    According to email communications with NPS on January 15, 2021, the agency has completed its search for responsive records, but its review of responsive records remains ongoing.

140.    Upon information and belief, NPS has not completed its review of records responsive to this request.

141.    NPS has never informed WWP of whether it plans to fully comply with the request, whether it plans to withhold records, the exemptions claimed to justify any withholdings, or how WWP may appeal any adverse determination.

142.    NPS has not made all records responsive to WWP's request "promptly available" to WWP, because NPS has not fully complied with the request more than two years later.

**NPS FOIA Request NPS-2020-00835 / DOI-NPS-2020-001218**
**(Records Requested: 2019 Materials Regarding the**
**Range Program at Capitol Reef National Park)**

143.     On or about May 16, 2020, Mr. Ratner properly submitted a FOIA request to NPS

for materials regarding the range program in Capitol Reef National Park during calendar year

2019.

144.     On May 26, 2020, NPS emailed Mr. Ratner with an acknowledgement of his

request, and assigned it the tracking number NPS-2020-00835, which has been converted into

tracking number DOI-NPS-2020-001218 in the foiaonline.gov tracking system. In its

acknowledgement email, NPS did not indicate into which category it placed the request, but the

foiaonline.gov tracking system shows it has been placed into the "exceptional/voluminous"

category.

145.     According to the foiaonline.gov tracking system, NPS listed a due date for its

response to WWP's request as June 12, 2020. Upon information and belief, the "due date" is the

date by which NPS would have needed to render a timely determination or produce all

responsive records to comply with FOIA's 20-day deadline.

146.     NPS provided no written notice to WWP explaining the "unusual circumstances"

warranting the request's placement in the "exceptional/voluminous" category.

147.     NPS failed to provide WWP with responsive records or a determination regarding

this request within 20 business days or by June 12, 2020, resulting in the constructive denial of

WWP's request.

148.     NPS has released no records responsive to this request.

149.     This request remains in the "Evaluation" phase, according to the foiaonline.gov

tracking system.

150.    According to email communications with NPS on January 15, 2021, the agency has "approximately" completed its search for responsive records, but its review of responsive records remains ongoing.

151.    Upon information and belief, NPS has not completed its review of records responsive to this request.

152.    NPS has never informed WWP of whether it plans to fully comply with the request, whether it plans to withhold records, the exemptions claimed to justify any withholdings, or how WWP may appeal an adverse determination.

153.    NPS has not made all records responsive to WWP's request "promptly available" to WWP, because NPS has not fully complied with the request nearly one year later.

**NPS FOIA Request DOI-NPS-2021-000622**
**(Records Requested: Materials Regarding the Range Program at**
**Black Canyon of the Gunnison National Park)**

154.    On or about November 4, 2020, Mr. Ratner properly submitted a FOIA request to NPS for materials regarding the range program at Black Canyon of the Gunnison National Park.

155.    The request specifically asked for NPS records regarding the range program at the Black Canyon of the Gunnison unit falling within 18 categories, including records regarding bighorn and domestic sheep, Gunnison sage-grouse, and livestock-related installations, infrastructure, roads, pipelines, or other alterations within the Park.

156.    It does not appear NPS provided Mr. Ratner an acknowledgement email for this request, but according to the foiaonline.gov tracking system, on or about November 4, 2020, NPS assigned this FOIA request tracking number DOI-NPS-2021-000622.

157.    No "due date" is listed for this request and this request remains in the "Evaluation" phase according to the foiaonline.gov tracking system.

158.    NPS failed to provide WWP with responsive records or a determination regarding this request within 20 business days or by December 3, 2020.

159.    On February 5, 2021, NPS provided a "final" response to this request, granting the request in part and denying the request in part. NPS provided just six documents totaling 121 pages as responsive to WWP's request for all materials within 18 categories regarding the range program at Black Canyon of the Gunnison National Park.

160.    In its "final" response letter, NPS asserted it could not locate responsive records to 15 of the 18 categories outlined in WWP's request, including records regarding bighorn and domestic sheep, Gunnison sage-grouse, and livestock-related installations, infrastructure, roads, pipelines, and other alterations.

161.    In its "final" response letter, NPS stated it searched for responsive records within the agency's "range program" and "range management" files.

162.    WWP request's sought records regarding the range program at the Black Canyon of the Gunnison unit, but did not ask NPS to limit its search only to "range program" and "range management" files if records responsive to many of the categories listed by WWP are otherwise in NPS's possession.

163.    For example, Congress has designated over half of the NPS-managed acres of the Black Canyon of the Gunnison unit as wilderness. As such, inventories of livestock-related installations, infrastructure, roads, pipelines, and other alterations within the designated wilderness likely exist in NPS's possession.

164.    Further, materials regarding bighorn sheep and Gunnison sage-grouse within the Black Canyon of the Gunnison unit likely exist within NPS's resource files, as "wildlife components" were specifically cited by Congress in establishing the area as a national park.

165.    In its "final" response letter, NPS also asserted that it withheld six pages responsive to this request under FOIA Exemption 5, which allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." *See* 5 U.S.C. § 552(b)(5). NPS contended that the deliberative process privilege applied to one partial page and five complete pages of responsive materials because they are "predecisional and deliberative."

166.    The withheld document in question is a draft of a "Memorandum of Understanding between the Department of the Interior, Bureau of Land Management and the National Park Service, Black Canyon of the Gunnison National Park and Curecanti National Recreation Area for Coordinated Management of Livestock Grazing" from January of 2020.

167.    In invoking FOIA Exemption 6 for this draft memorandum in its "final" response letter to WWP, NPS vaguely contended that "public dissemination of this information would have a chilling effect on the agency's deliberative processes since this document is a product of ongoing discussions with the BLM to finalize the document."

168.    On March 17, 2021, WWP submitted by email an administrative appeal of NPS's response to this request on the grounds that the agency had conducted an inadequate search for responsive records, as evidenced by a mere six responsive documents since NPS began managing the Black Canyon of the Gunnison unit, first as a national monument beginning in 1933, and then as a national park beginning in 1999.

169.    WWP also appealed on the grounds that NPS improperly withheld materials under FOIA Exemption 5. In the appeal, Mr. Ratner explained that NPS failed to specify that the agency reasonably foresees that disclosure of the draft memorandum would harm an interest

protected by FOIA Exemption 5, as required for the exemption's proper invocation. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I).

170.    Further, Mr. Ratner explained that similar memoranda of understanding between NPS and the Bureau of Land Management are not "decisional" documents, because they do not create new policy. Rather, other memoranda between the two agencies regarding livestock grazing merely recite the rights and responsibilities of the respective agencies based on facts and existing law and policy, indicating the draft memorandum is not a "predecisional" document warranting invocation of FOIA Exemption 5 by NPS.

171.    To comply with FOIA and the 20-business-day decision deadline imposed by FOIA and applicable appeal resolution regulations at 5 U.S.C. § 552(a)(6)(A)(ii) and 43 C.F.R. § 2.62, the deadline for NPS to issue a final determination on WWP's appeal was April 14, 2021.

172.    Neither NPS nor any DOI FOIA appeals officer has acknowledged or made any determination regarding WWP's administrative appeal. As such, NPS has constructively denied WWP's appeal.

173.    Upon information and belief, NPS has not conducted an adequate search for records responsive to this request, including but not limited to records regarding bighorn and domestic sheep, Gunnison sage-grouse, and livestock-related installations, infrastructure, roads, pipelines, and other alterations.

174.    Upon information and belief, NPS has improperly withheld materials responsive to this request under FOIA Exemption 5.

**NPS FOIA Request DOI-NPS-2021-001449**
**(Records Requested: Materials Regarding 2007 Programmatic Agreement between**
**Glen Canyon NRA and Utah State Historic Preservation Office)**

175.     On or about December 22, 2020, Mr. Ratner properly submitted a FOIA request to NPS for materials regarding a 2007 Programmatic Agreement between the NPS superintendent of the Glen Canyon National Recreation Area and the Utah State Historic Preservation Office.

176.     On December 22, 2020, Mr. Ratner received an automated email acknowledging the request, assigned it tracking number DOI-NPS-2021-001449. The automated email did not indicate into which category NPS placed the request, but the foiaonline.gov tracking system shows it has been placed in the "exceptional/voluminous" category.

177.     According to the foiaonline.gov tracking system, NPS listed a due date for its response to WWP's request as February 9, 2021. Upon information and belief, the "due date" is the date by which NPS would have needed to render a timely determination or produce all responsive records to comply with FOIA's 20-day deadline.

178.     NPS provided no written notice to WWP explaining the "unusual circumstances" warranting the request's placement in the "exceptional/voluminous" category.

179.     NPS failed to provide WWP with responsive records or a determination regarding this request within 20 business days or by January 22, 2021, resulting in the constructive denial of WWP's request.

180.     NPS has released no records responsive to this request.

181.     This request remains in the "Evaluation" phase, according to the foiaonline.gov tracking system.

182.    Upon information and belief, NPS has not completed its search for or review of records responsive to this request.

183.    NPS has never informed WWP of whether it plans to fully comply with the request, whether it plans to withhold records, the exemptions claimed to justify any withholdings, or how WWP may appeal any adverse determination.

184.    NPS has not made all records responsive to WWP's request "promptly available" to WWP, because NPS has not fully complied with the request more than four months later.

**Recent Communication Regarding NPS's Response to FOIA Requests**

185.    WWP staff members, including Mr. Ratner, joined a telephone conference with FOIA officials from NPS and the Department of Interior on December 8, 2020, to discuss the agency's delays in providing responsive records and WWP's preferences for prioritization of its requests going forward. On the call, NPS generally indicated it would commit resources toward producing responsive materials more quickly going forward, noting WWP's preferred prioritization of its requests.

186.    In response to a status update request from Mr. Ratner, NPS emailed on January 15, 2021, informing WWP that the agency would produce a minimum of 500 pages each month in response to the first eight of WWP's nine outstanding FOIA requests outlined above. NPS also indicated the number of potentially responsive files to each outstanding request. NPS provided no estimated dates by which production on each outstanding request would be completed.

187.    On January 17, 2021, Mr. Ratner replied to NPS's email, again expressing concern about the pace of progress on WWP's outstanding requests. Mr. Ratner noted that based on the number of potentially responsive records noted in the January 15 email, even a conservative estimate of the number of pages in each record combined with the agency's

projected pace of 500 pages per month would mean it would take multiple years before NPS would provide responsive records to all of WWP's outstanding requests, some of which were submitted over two years prior.

188.    Since January 1, 2021, NPS has provided WWP approximately 431 pages of materials responsive to its outstanding FOIA requests with the agency, far less than the 500 pages per month NPS projected it would provide WWP going forward.

**Summary of NPS's Failure to Comply with FOIA's Disclosure Requirements**

189.    NPS is overdue in its obligations to respond to WWP's FOIA requests and appeals and to search for, review, and provide non-exempt responsive records.

190.    Because NPS has failed to respond to WWP's requests and appeals within the periods required by FOIA, WWP has constructively exhausted all administrative remedies required by FOIA and may seek immediate judicial review. 5 U.S.C. §§ 552(a)(6)(A)(i)–(ii) and 552(a)(6)(C)(i).

191.    The filing of this lawsuit is necessary to compel NPS to produce all records that are responsive to the nine FOIA requests outlined above.

192.    WWP's claims presented herein are not insubstantial within the meaning of 5 U.S.C. § 552(a)(4)(E)(ii)(II).

193.    No exceptional circumstances exist within the meaning of FOIA, 5 U.S.C. § 552(a)(6)(C), which would justify this Court granting NPS more time to review and produce requested records.

194.    NPS has not exercised due diligence in searching for and releasing records responsive to WWP's requests, nor in resolving WWP's appeals.

195.    The delays at issue in this case result from a predictable agency workload of FOIA requests and appeals. NPS has not made reasonable progress in reducing its backlog of pending requests and appeals.

196.    Based on the nature of WWP's professional activities, WWP will continue to submit FOIA requests to NPS in the foreseeable future. Indeed, WWP has firm and definite plans to submit additional FOIA requests to NPS in the very near future. WWP's professional activities will be adversely affected if NPS is allowed to continue violating FOIA's disclosure provisions. Unless enjoined and made subject to a declaration of WWP's legal rights by this Court, NPS will continue to violate the rights of WWP to receive public records under FOIA.

197.    WWP has been required to expends costs and commit the time and resources of its staff and attorneys to prosecute this action.

## FIRST CLAIM FOR RELIEF
### Violation of FOIA—Failure to conduct adequate searches for records responsive to WWP's requests.

198.    WWP realleges and incorporates by reference all preceding paragraphs.

199.    WWP has a statutory right to have NPS process its FOIA requests in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3)(C).

200.    NPS's admission that its search for and review of records responsive to request NPS-2019-00394 remains ongoing over two years after WWP submitted this request indicates the agency has failed to conduct an adequate search for responsive records.

201.    The "final response" of 169 files produced for request NPS-2019-00750—a request classified as "exceptional/voluminous" by NPS—indicates NPS has failed to conduct an adequate search for responsive records.

202.   NPS's admission that its review of records responsive to request NPS-2019-00750 remains ongoing over two years after WWP submitted this request further indicates the agency has failed to conduct an adequate search for responsive records.

203.   The "final" response of 6 files produced for request DOI-NPS-2021-000622— despite NPS management of Black Canyon of the Gunnison since 1933, and despite the near-certainty that responsive records regarding bighorn sheep, Gunnison sage-grouse, and livestock-related installations, infrastructure, roads, pipelines, and other alterations are in the possession of NPS—indicates NPS has failed to conduct an adequate search for responsive records.

204.   NPS violated WWP's rights because it failed to perform adequate searches reasonably calculated to discover the records requested in FOIA requests NPS-2019-00394, NPS-2019-00750, and DOI-NPS-2021-000622, as outlined above.

205.   NPS's failure to conduct adequate searches for records responsive to WWP's FOIA requests violates FOIA.

206.   NPS's FOIA violations have deprived WWP of its right to receive public records, thereby injuring WWP's rights and interests.

207.   WWP is therefore entitled to declaratory and injunctive relief stating NPS violated FOIA and requiring NPS to promptly perform adequate searches reasonably calculated to discover the requested records, review them expeditiously, and provide all responsive records to WWP within 20 days of the Court's order.

## SECOND CLAIM FOR RELIEF
### Violation of FOIA—Failure to make adequate determinations.

208.   WWP realleges and incorporates by reference all preceding paragraphs.

209.   WWP properly requested records within NPS's control in the FOIA requests outlined above.

210.    WWP has a statutory right under FOIA to receive substantive determinations from NPS, as well as to receive the underlying records it seeks.

211.    NPS failed to make adequate and timely determinations for seven of WWP's outstanding FOIA requests outlined above, because the statutory 20 days for responses have passed and NPS has alternately or jointly (a) failed to provide written notice explaining the "unusual circumstances" that warrant setting aside the statutory deadline; (b) failed to gather and review responsive records; (c) failed to inform WWP whether it plans to comply with the requests; and/or (d) failed to provide the reasons for which NPS is denying the requests, the volume of records denied, and how WWP may appeal. 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(6)(B)(i)–(ii), & 552(a)(7)(B)(ii); 43 C.F.R. § 2.15(f).

212.    Regarding requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2020-00199, NPS-2020-00835, and DOI-NPS-2021-001449, NPS has failed to provide written notice explaining "unusual circumstances" that warrant setting aside the statutory deadlines.

213.    Regarding requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2020-00199, NPS-2020-00835, NPS admits it has not completed its review of responsive records.

214.    For requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2020-00199, NPS-2020-00835, and DOI-NPS-2021-001449, NPS has failed to inform WWP of whether it plans to fully comply with the requests, whether it plans to withhold further records, the exemptions claimed to justify any withholdings, or how WWP may appeal adverse determinations.

215.    For the reasons stated above, NPS has failed to make adequate determinations within the relevant timeframes for requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2020-00199, NPS-2020-00835, and DOI-NPS-2021-001449.

216.    NPS's FOIA violations have deprived WWP of its right to receive public records, thereby injuring WWP's rights and interests.

217.    WWP is therefore entitled to declaratory and injunctive relief requiring NPS to promptly produce records responsive to FOIA requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2020-00199, NPS-2020-00835, and DOI-NPS-2021-001449.

### THIRD CLAIM FOR RELIEF
**Violation of FOIA—Improper withholding of records.**

218.    WWP realleges and incorporates by reference all preceding paragraphs.

219.    NPS has violated and continue to violate the FOIA by failing to provide WWP with timely and full responses to eight of the requests outlined above.

220.    NPS has failed to make responsive records promptly available, as required by FOIA. 5 U.S.C. §§ 552(a)(3)(A) and 552(a)(6)(C)(i).

221.    WWP has a statutory right to the records sought absent proper invocation of any of FOIA's nine exemptions to prevent their disclosure. 5 U.S.C. § 552(b)(1)–(9).

222.    For FOIA requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2020-00199, NPS-2020-00835, and DOI-NPS-2021-001449, NPS has never indicated that any of FOIA's nine disclosure exemptions prevent the disclosure of any responsive records.

223.    For FOIA requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2019-00750, NPS-2020-00199, and NPS-2020-00835, NPS admits it has

responsive or potentially responsive records in its possession that it has not yet provided WWP and to which NPS has not claimed any of FOIA's nine exemptions prevent disclosure.

224.    NPS's failure to make all responsive records promptly available within the statutory deadline or within any reasonable timeframe is constructive denial and unlawful withholding.

225.    For requests, NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2019-00750, NPS-2020-00199, NPS-2020-00835, and DOI-NPS-2021-001449, NPS is improperly withholding records from WWP in violation of FOIA.

226.    NPS's improper withholding of records to which WWP is legally entitled injures WWP's rights and interests.

227.    Unless enjoined and made subject to a declaration of WWP's legal rights by this Court, NPS will continue to violate the rights of WWP to receive public records under FOIA.

**FOURTH CLAIM FOR RELIEF**
**Violation of FOIA--Improper Withholding of Records under Exemption 4.**

228.    WWP realleges and incorporates by reference all preceding paragraphs.

229.    Upon receipt of a FOIA request from WWP, NPS is required to make responsive records promptly available to WWP unless the records may be withheld under one of FOIA's exemptions. 5 U.S.C. § 552(a)(3)(A) & 552(b).

230.    NPS withheld 12 pages responsive to FOIA request NPS-2019-00750 under Exemption 4, stating conclusory and generalized allegations that "[t]he withheld information is commercial or financial information relating to the contracting of labor and materials to carryout [sic] the range program monitoring services."

231.    NPS alleged "the information at issue was required to be submitted to the government," and "is considered confidential if disclosure of it is likely to cause substantial harm

to the competitive position of the person from whom the information was obtained, or harm the government's ability to obtain it in the future." Further, NPS alleged, "[t]he proposal submitted contains individual unit costs, strategies and analyses by the submitter that is confidential."

232.     NPS failed to present evidence revealing actual competition in the market for contracting labor and materials to carry out range program monitoring services at Capitol Reef National Park or a likelihood of substantial competitive injury to the person from whom the proposal was obtained.

233.     WWP has a statutory right to the production of any records that are responsive to its FOIA request, except those portions of the records that are exempted under 5 U.S.C. § 552(b).

234.     NPS has failed to meet its burden to show that the 12 withheld pages fall within Exemption 4, 5 U.S.C. § 552(b)(4).

235.     As of the date on which WWP filed this complaint, NPS is unlawfully withholding from public disclosure records and portions of records responsive to request NPS-2019-00750 to which FOIA exemptions do not apply.

236.     NPS's improper withholding of records to which WWP is legally entitled injures WWP's rights and interests.

237.     Unless enjoined and made subject to a declaration of WWP's legal rights by this Court, NPS will continue to violate the rights of WWP to receive public records under FOIA.

### FIFTH CLAIM FOR RELIEF
### Violation of FOIA—Improper Withholding of Records under Exemption 5.

238.     WWP realleges and incorporates by reference all preceding paragraphs.

239.     Upon receipt of a FOIA request from WWP, NPS is required to make responsive records promptly available to WWP unless the records may be withheld under one of FOIA's exemptions. 5 U.S.C. §§ 552(a)(3)(A) & 552(b).

240.    NPS withheld six pages responsive to FOIA request DOI-NPS-2021-000622 under Exemption 5, stating conclusory and generalized allegations that the deliberative process privilege applied to one partial page and five complete pages of responsive materials contained in a draft "Memorandum of Understanding" because they are "predecisional and deliberative."

241.    NPS further generally alleged that "public dissemination of this information would have a chilling effect on the agency's deliberative processes since this document is a product of ongoing discussions with the BLM to finalize the document."

242.    NPS failed to explain how the outcome of finalizing the draft "Memorandum of Understanding" would lead to a decision, such that the draft qualifies as "predecisional."

243.    WWP has a statutory right to the production of any records that are responsive to its FOIA request, except those portions of the records that are exempted under 5 U.S.C. § 552(b).

244.    NPS has failed to meet its burden to show that the six withheld pages fall within Exemption 5, 5 U.S.C. § 552(b)(5).

245.    As of the date on which WWP filed this complaint, NPS is unlawfully withholding from public disclosure records and portions of records responsive to request DOI-NPS-2021-000622 to which FOIA exemptions do not apply.

246.    NPS's improper withholding of records to which WWP is legally entitled injures WWP's rights and interests.

247.    Unless enjoined and made subject to a declaration of WWP's legal rights by this Court, NPS will continue to violate the rights of WWP to receive public records under FOIA.

**SIXTH CLAIM FOR RELIEF**
**Violation of FOIA—Improper Withholding of Records under Exemption 6.**

248.    WWP realleges and incorporates by references all preceding paragraphs.

249. Upon receipt of a FOIA request from WWP, NPS is required to make responsive records promptly available to WWP unless the records may be withheld under one of FOIA's exemptions. 5 U.S.C. § 552(a)(3)(A) & 552(b).

250. NPS withheld portions of at least five pages responsive to FOIA request NPS-2019-00750 under Exemption 6, stating conclusory and generalized allegations that the withheld information constitutes files similar to "personnel and medical files" because disclosure "would constitute a clearly unwarranted invasion of personal privacy."

251. NPS further generally alleged that in balancing the privacy interests of those affected by disclosure and the public interest in shedding light on the agency's performance of its statutory duties, privacy interests are more substantial. NPS also stated WWP had "not provided information that explains a relevant public interest under the FOIA in the disclosure of this personal information," despite a full paragraph in WWP's request letter explaining the public interest in the requested records.

252. The portions of responsive records withheld by NPS under Exemption 6 are the names of livestock grazing and trailing permittees, the disclosure of which this Court has previously concluded "would not constitute a clearly unwarranted invasion of personal privacy," and thus, an agency's "reliance on Exemption 6 for withholding [such] information is not justified." *W. Watersheds Project v. Bureau of Land Mgmt.*, No. 09-cv-482-CWD, 2010 WL 3735710 at *12 (D. Idaho Sept. 13, 2010).

253. WWP has a statutory right to the production of any records that are responsive to its FOIA request, except those portions of the records that are exempted under 5 U.S.C. § 552(b).

254. NPS has failed to meet its burden to show that the withheld portions of at least five pages fall within Exemption 6, 5 U.S.C. § 552(b)(6).

255.    As of the date on which WWP filed this complaint, NPS is unlawfully withholding from public disclosure records and portions of records responsive to request NPS-2019-00750 to which FOIA exemptions do not apply.

256.    NPS's improper withholding of records to which WWP is legally entitled injures WWP's rights and interests.

257.    Unless enjoined and made subject to a declaration of WWP's legal rights by this Court, NPS will continue to violate the rights of WWP to receive public records under FOIA.

### SEVENTH CLAIM FOR RELIEF
**Pattern, Practice, or Policy of Violating FOIA.**

258.    WWP realleges and incorporates by reference all preceding paragraphs.

259.    NPS has adopted and is engaged in a pattern, practice, or policy of violating the procedural requirements of FOIA by repeatedly failing to make adequate determinations regarding WWP's requests as required by 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(6)(B)(i)–(ii), and 552(a)(7)(B)(ii).

260.    NPS has adopted and is engaged in a pattern, practice, or policy of violating the requirements of FOIA by repeatedly failing to make records responsive to WWP's requests promptly available as required by 5 U.S.C. §§ 552(a)(3)(A) and 552(a)(6)(C)(i).

261.    In light of the requests outlined above, NPS's violations of FOIA are not isolated incidents, WWP has been personally harmed by NPS's pattern, practice, or policy of violating multiple requirements of FOIA, and WWP has a sufficient likelihood of future harm by this pattern, practice, or policy. *See Hajro v. U.S. Citizenship and Immigration Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992)). Thus, NPS has engaged in a pattern, practice, or policy of violating FOIA.

262.    WWP is therefore entitled to declaratory and injunctive relief stating NPS has unlawfully engaged in a pattern, practice, or policy of violating FOIA and requiring the agency to cease this pattern, practice, or policy immediately.

**PRAYER FOR RELIEF**

WHEREFORE, WWP respectfully prays that this Court:

A.    Declare that NPS's failure to conduct adequate searches reasonably calculated to discover records responsive to WWP's requests NPS-2019-00394, NPS-2019-00750, and DOI-NPS-2021-000622 outlined above is in violation of FOIA, 5 U.S.C. § 552(a)(3)(A)-(D).

B.    Declare that NPS's failure to provide WWP with adequate determinations for WWP's requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2020-00199, NPS-2020-00835, and DOI-NPS-2021-001449 outlined above is in violation of the FOIA, 5 U.S.C. § 552(a)(6)–(7).

C.    Declare that NPS's improper withholding of records responsive to WWP's requests NPS-2019-00057, NPS-2019-00394, NPS-2019-00408, NPS-2019-00409, NPS-2019-00750, NPS-2020-00199, NPS-2020-00835, and DOI-NPS-2021-001449 is in violation of FOIA, 5 U.S.C. § 552(a)(3)(A);

D.    Declare that NPS's unlawful withholding pursuant to FOIA Exemptions 4, 5, and 6, is in violation of FOIA, 5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(C)(i), and 552(b)(4)–(6).

E.    Declare that NPS has unlawfully engaged in a pattern, practice, or policy of violating FOIA's requirements as outlined above.

F.    Enjoin NPS from continuing to withhold non-exempt records responsive to WWP's requests.

G.      Enjoin NPS from continuing to engage in their pattern, practice, or policy of violating the requirements of FOIA as outlined above.

H.      Order NPS to provide WWP with all agency records responsive to its nine outstanding FOIA requests outlined above, including any and all such records that would be responsive as of the date of the Court's order, within 90 days of the Court's order;

I.      Award WWP its reasonable costs, litigation expenses, and attorneys' fees incurred in prosecuting this civil action under FOIA, 5 U.S.C. § 552(a)(4)(E), and/or all other applicable authorities.

J.      Grant such other and further relief as WWP may hereinafter request, or as the Court deems just and proper.

Respectfully submitted this 20th day of May, 2021.

*/s/ Talasi B. Brooks*
Talasi B. Brooks (Idaho # 9712)

John Persell (Utah # 17298)
*pro hac vice admission pending*

*Attorneys for Plaintiff*