UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, | Case No. 1:21-cv-00219-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| NATIONAL PARK SERVICE, | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant National Park Service's ("NPS") Motion to Transfer Venue under 28 U.S.C. § 1404(a). Dkt. 7. Having reviewed the record, the Court finds the parties have adequately presented the facts and legal arguments in their briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court decides the pending motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons stated herein, the Court's GRANTS NPS's Motion to Transfer Venue under 28 U.S.C. § 1404(a).

## II. BACKGROUND

On May 20, 2021, Western Watersheds Project ("WWP") filed the instant suit alleging that NPS failed to timely respond to, or did not properly adjudicate, nine Freedom

of Information Act ("FOIA") requests. Dkt. 1. The relevant FOIA requests concern information regarding the management of livestock grazing and associated infrastructure in four units of the National Park System located in Utah and Colorado: Capitol Reef National Park, Glen Canyon National Recreation Area, Dinosaur National Monument, and Black Canyon of the Gunnison National Park. NPS responded to WWP's Complaint with the instant Motion to Transfer Venue under 28 U.S.C. § 1404(a) ("Motion to Transfer"). Dkt. 7.

In its Motion to Transfer, NPS notes the majority of the relevant FOIA requests were designed to acquire documents in preparation for a federal grazing lawsuit that WWP filed against NPS in 2019, and which remains pending in the District of Utah. *See WWP v. National Park Service, et al.*, 19-CV-65-DN-PK (D. Utah 2019) ("Utah litigation"). In the suit pending before this Court, WWP alleges NPS did not properly handle WWP's FOIA requests in Utah and Colorado. NPS suggests the case should be transferred to Utah given: (1) the relative lack of interest the District of Idaho has in this suit; (2) the pending Utah litigation;[1] and (3) the fact that the National Park units, documents, and Government witnesses at issue are primarily located in Utah.

WWP opposes the Motion to Transfer. WWP highlights that its longtime principal place of business in Idaho makes venue appropriate in Idaho under both FOIA's venue provision, 5 U.S.C. § 552(a)(4)(B), and under the federal venue statute, 28 U.S.C. § 1391(c)(2). In addition, WWP argues its interest in choosing the forum must be given

---

[1] NPS does not suggest that this case should be consolidated with the Utah litigation, but rather notes that the pending Utah case is related to this case.

substantial weight and that the balance of convenience factors do not favor transfer to Utah.

The Motion to Transfer has been fully briefed and is ripe for the Court's review.

### III. LEGAL STANDARD

A district court may, "for the convenience of parties and witnesses," and "in the interest of justice," transfer "any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Because the broad federal venue statutes often result in inconvenient forums, Congress intended section 1404(a) to remedy this situation by authorizing the transfer of actions to a more convenient forum." *Our Children's Earth Found. v. U.S. Envtl. Prot. Agency*, 2008 WL 3181583, at *4 (N.D. Cal. Aug. 4, 2008) (citing *Ferrens v. John Deere Co.*, 494 U.S. 516, 522 (1990)).

Transfer under section 1404(a) involves a two-step inquiry. First, the court must determine whether the proposed transferee court is one where the action might have been brought. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). Second, provided the case could have been brought in the transferee forum, the court must balance "the plaintiff's interest in choosing a forum against the aggregate considerations of convenience and the interest of justice/fairness." *Western Watersheds Project v. Bernhardt*, 2019 WL 3022188, at *4 (D. Idaho July 9, 2019) (citations omitted). In striking this balance, a court may consider the following non-exhaustive list of factors: (1) the plaintiff's choice of forum; (2) the convenience of the parties and the witnesses; (3) ease of access to evidence; (4) familiarity with the applicable law; (5) feasibility of consolidation with other claims; (6) any local interest in the controversy; and (7) the relative court congestion and time to

MEMORANDUM DECISION AND ORDER - 3

trial in each forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842–43 (9th Cir. 1986); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

The moving party bears the burden of showing that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Further, courts give "great weight" to a plaintiff's choice of forum. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). However, "the degree to which courts defer to a plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (cleaned up).

Courts adjudicate motions to transfer under 28 U.S.C. § 1404(a) with an "individualized" and "case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d at 498. Ultimately, motions to transfer venue lie within the broad discretion of the district court. *Decker*, 805 F.2d at 843; *Jones*, 211 F.3d at 498.

## IV. ANALYSIS

### A. Step One: Where the Action Might Have Been Brought

"In determining whether an action 'might have been brought' in a district, the court looks to whether the action initially could have been commenced in that district." *Hatch*, 758 F.2d at 414 (citations omitted). The federal venue statute states that an entity plaintiff is deemed to reside, for venue purposes, "only in the judicial district in which it maintains its principal place of business[.]" 28 U.S.C. 1391(c)(2). Venue in FOIA cases is governed by 5 U.S.C. § 552(a)(4)(B), which more broadly provides that venue is proper in any district where either: (1) the plaintiff resides; (2) the plaintiff has its principal place of

business; (3) the relevant records are located; or (4) in the District of Columbia. 5 U.S.C. § 552(a)(4)(B); *Our Children's Earth Found.*, 2008 WL 3181583, at *6 (explaining district courts within the Ninth Circuit describe section 552(a)(4)(B) as a venue provision).

NPS contends a plaintiff can "reside" in more than one judicial district for purposes of venue in FOIA cases. Dkt. 7, at 4[2] (citing *Upjohn Co. v. Finch*, 303 F. Supp. 241, 254 (W.D. Mich. 1969)). NPS argues WWP "resides" in Utah under 5 U.S.C. § 552(a)(4)(B) because WWP works in Utah, routinely makes FOIA requests in Utah, frequently litigates in Utah—including by filing the related Utah litigation—and otherwise interacts with both the state and federal land management agencies located in Utah on a regular basis.

WWP counters that its "longtime principal place of business in Idaho solidly grounds this case in this judicial district under both FOIA's venue provision . . . and the federal venue statute[.]" Dkt. 8, at 7. WWP also argues "Idaho is the only district in which it resides," and suggests NPS's claim that an entity can reside in more than one judicial district is contrary to 28 U.S.C. § 1391(c)(2). *Id.* at 8. While WWP's contention is correct for purposes of federal venue under 28 U.S.C. § 1391(c)(2), it ignores that 5 U.S.C. § 552(a)(4)(B) provides venue is appropriate in FOIA cases in "the district in which the complainant resides, *or* has its principal place of business[.]" *Id.* (emphasis added); *see also Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1409 (9th Cir. 1989) (explaining special venue provisions should generally supplement general venue laws). While a plaintiff may at times reside, and have its principal place of business, in the same location,

---

[2] Page citations are to the ECF-generated page number.

equating plaintiff's principal place of business with its place of residence would render portions of the FOIA venue provision redundant and thus contrary to a fundamental rule of statutory interpretation. *See, e.g., Spencer Enters., Inc v. United States*, 345 F.3d 683, 691 (9th Cir. 2003) (noting a "cardinal rule of statutory interpretation [is] that no provision should be construed to be entirely redundant."). Thus, the Court finds the FOIA venue provision supplements the federal venue statute.

Generally, a plaintiff may "reside" in any place where it has substantial contacts. *See Pure Oil Co. v. Suarez*, 384 U.S. 202, 204–05 (1966) (interpreting venue provision similar to FOIA and finding venue was proper in Florida because defendant transacted business in Florida, even though defendant's principal office was in Illinois). NPS has identified the extensive contacts WWP has had with the District of Utah. Such contacts include filing the Utah litigation, which involves livestock grazing and trailing in Utah's Capitol Reef National Park. WPS made five of the nine FOIA requests at issue in this suit in order to support WWP's complaint in the Utah litigation. Dkt.7, at 6. WWP's substantial contacts with the District of Utah, and willingness to litigate in Utah in a case involving the majority of the FOIA requests at issue in this suit—despite its principal place of business in Idaho—suggest that this case could have initially been filed in Utah.

Moreover, even if WWP does not "reside" in Utah, WWP does not dispute that, under 5 U.S.C. § 552(a)(4)(B), venue might have been brought in Utah because most of the original records are located in Utah. Dkt. 7-1, ¶¶ 4–5. Instead, WWP argues NPS has already copied and sent many of the Utah records to Colorado as part of NPS's ongoing effort to fulfill WWP's FOIA requests. Dkt. 8, at 9. WWP also explains that three of the

four NPS units at issue in this case are headquartered in Arizona and Colorado, and not in Utah. *Id.* at 9 n.1. Such arguments do not undermine venue in Utah—where one of the NPS units is headquartered and three of the four National Parks at issue are at least partially located—and shows venue could also likely have been brought in Colorado, where all of the relevant documents that are not in Utah are apparently located. *Id.* at 9. This, in turn, further undermines the overall utility of venue in Idaho, where none of the National Parks or records are located, and none of the NPS units are headquartered.

The Court finds the action might have been brought in Utah and turns to the second step of the venue transfer analysis.

## B. Step Two: Convenience and the Interest of Justice

### 1. Convenience Factors

As another Judge of this Court has explained: "Environmental cases such as this one typically are resolved by the court examining the administrative record to decide cross-motions for summary judgment. . . . There are no witnesses to consider, and documentary evidence is as easily provided in one venue as another, especially in this age of electronic transmission." *Bernhardt*, 2019 WL 3022188, at *5 (quoting *Ctr. for Biological Diversity v. Kempthorne*, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007)).[3] Further, "because all

---

[3] NPS suggests this case is different because WWP also alleges NPS has "adopted and is engaged in a pattern, practice, or policy of violating the procedural requirements of FOIA" by repeatedly failing to make adequate determinations and produce responsive documents. Dkt. 9, at 7, n. 3 (quoting Dkt. 1, at ¶¶ 258–262). NPS argues the latter claim is unlikely to be resolved on summary judgment because NPS intends to produce evidence that it does not have such policy and is not engaged in such practice, within the region at issue. NPS contends WWP's pattern and practice claim "practically guarantees witnesses from Utah (and other states) would need to travel to Idaho for trial," making Idaho an inconvenient forum for witnesses. *Id.*

(continued)

federal courts are competent to decide federal issues correctly" there is no reason that the District of Utah would be more familiar with the applicable law. *Bernhardt*, 2019 WL 3022188, at *5. Finally, although Idaho has a more congested docket and fewer active federal district judges than Utah, the difference is not so stark as to weigh in favor of transfer. Thus, the majority of the convenience factors are essentially neutral, "distilling the Court's focus down to the strain between" WWP's choice of forum and Utah's more localized interest in this dispute.[4] *Id.* at *5; *Ctr. for Biological Diversity*, 2007 WL 2023515, at *5 (explaining "in most environmental cases, the issue of which federal district should adjudicate the issues is determined by weighing a plaintiff's choice of forum against the competing interest in 'having localized controversies decided at home'") (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)).

### 1. WWP's Choice of Forum

"The general rule is that a plaintiff's choice of forum is afforded substantial weight." *Williams*, 157 F. Supp. 2d at 1106; *Decker*, 805 F.2d at 842 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum").

---

However, courts accord less weight to the inconvenience of party witnesses because they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated. *Allstate Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009). Defendants do not specifically identify any witnesses whom they expect will testify at trial other than NPS employees, and the witness convenience factor accordingly adds little to the court's analysis. *Id.*

[4] WWP argues it will be inconvenienced if this case is transferred to Utah because one of its attorneys, Talasi Brooks, has not been admitted to practice in Utah, and will have to obtain pro hac vice admission in order to represent WWP there. Yet, "the location of counsel is not an appropriate factor for the Court to consider when deciding a motion to transfer." *Ctr. for Biological Diversity v. Export-Import Bank of the U.S.*, 2013 WL 5273088, at *6 (N.D. Cal. Sept. 17, 2013) (citations omitted). For the same reason, WWP's contention that NPS will not be inconvenienced because there is a U.S. Attorney's Office in Idaho is also inapposite.

However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration*." Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *Williams*, 157 F. Supp. 2d at 1107 (noting deference to the plaintiff's chosen venue is "substantially reduced" where the forum lacks a significant connection to the facts giving rise to the litigation).

Here, WWP identifies one operative fact that occurred in Idaho: WWP staff attorney Talasi Brooks helped develop this FOIA action from her office in Idaho. Apart from this, WWP argues Idaho also has a particular interest in the parties and the subject matter because WWP's principal place of business has been in Idaho since its inception in 1993. WWP highlights that it has long-established and extensive contacts within this judicial district, including that its website, document repository, membership database, two of its staff members, and quarterly newsletter, are all managed or located in Hailey, Idaho. WWP also notes it has five times more active members in Idaho than in Utah, and that it has repeatedly availed itself of this forum to resolve similar concerns regarding agencies' compliance with FOIA beyond Idaho's geographic boundaries. Dkt. 8, at 11.

While WWP may have a significant interest in Idaho, the underlying suit has little, if anything, to do with Idaho. None of the FOIA requests at issue involve National Parks located or headquartered in Idaho. None of the relevant records are located in Idaho. None of the NPS employees who searched for responsive documents work in Idaho. Instead, this case concerns livestock grazing in National Parks located and headquartered in Utah, Arizona, and Colorado. All of the requested records are located in Utah and Colorado. All

nine of the FOIA requests at issue were also made by Jonathan Ratner, WWP's State Director for Utah, Colorado, and Wyoming. And, WWP brings this suit because NPS allegedly did not appropriately handle WWP's FOIA requests in Utah and Colorado. In fact, in its Response to the Motion to Transfer, WWP contends Alison Yamato, the NPS FOIA Officer for Interior Regions 6, 7, and 8, "is the NPS official responsible for reviewing and releasing responsive records to WWP, and her actions and delays primarily led to the present suit." *Id.* at 9. Interior Regions 6, 7, and 8 cover the States of Arizona, Colorado, Montana, New Mexico, Oklahoma, Texas, Utah, and Wyoming. Dkt. 7-1, at ¶ 1. Simply put, several states, and particularly Utah and Colorado, have a greater interest in this suit than does Idaho.

Despite WWP's connection with Idaho, the Court finds its choice of forum is entitled to less deference because the environmental impact with which the FOIA requests are concerned—the livestock grazing in four national parks, three of which are entirely or at least partially located in Utah—has no relationship to Idaho. *Klamath Tribes v. U.S. Bureau of Reclamation*, 2018 WL 3570865, at *7 (N.D. Cal. July 25, 2018) ("[W]hen the environmental impact alleged is not in the district chosen and defendants move to transfer to the affected area, then plaintiff's choice of forum is given less consideration); *Western Watersheds Project v. Interior Board of Land Appeals*, 2019 WL 3877302, at *2 (D. Idaho Aug. 16, 2019) (noting plaintiff's chosen forum of Idaho was entitled to less deference where none of the operative facts occurred in Idaho even though plaintiff's principal place of business is in Idaho); *Bernhardt*, 2019 WL 3022188, at *9 (finding the fact that the agency action, and plaintiff's claims regarding the agency action, was more pronounced in

Wyoming than in Idaho overcame plaintiff's original choice of forum in Idaho); *Sierra Club v. U.S. Defense Energy Support Ctr.*, 2011 WL 89644, at *2 (N.D. Cal. Jan 11, 2011) (giving the chosen forum little weight because "the *underlying action* is not connected to the Northern District of California") (emphasis added).

Moreover, as NPS highlights, the instant suit directly concerns documents that are also at issue in the pending Utah litigation. The majority of FOIA requests at issue in this case are, in WWP's own words, designed to seek "the underlying administrative records" and other records to support WWP's case in the pending Utah litigation. Dkt. 7-3, at ¶ 47. That WWP chose to file this suit in Idaho, when the related case remains pending in Utah, suggests the possibility of forum shopping. While the Court is not accusing WWP of forum shopping, the possibility alone justifies lessening the deference given to WWP's choice of forum. *Williams*, 157 F. Supp. 2d at 1106 ("If there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference"); *see also Carpenter v. U.S. Dep't of Justice*, 2005 WL 1290678, *2 (D. Conn. Apr. 28, 2005) (finding it "very significant," in the context of a transfer request, that plaintiff's FOIA suit was essentially a means to get discovery related to a case pending in another district.)

In short, the Court finds WWP's choice of forum is entitled to minimal weight.

*2.  Interests of justice*

 "The 'interests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way." *Gerin v. Aegon USA, Inc.*, 2007 WL 1033472, at *6 (N.D. Cal. Apr. 4, 2007)

(citations omitted). The interests of justice is promoted when, among other things, a localized controversy is decided in the region that it impacts. *Decker*, 805 F.2d at 843.

As explained above, Idaho has little to no connection with the facts giving rise to WWP's complaint. By contrast, Utah has a particular interest in this case because the majority of the FOIA requests at issue concern Utah's Capitol Reef National Park. Dkt. 1, ¶¶ 51–181 (outlining nine FOIA requests at issue, five of which concern Capitol Reef National Park, which is located entirely in Utah). These five FOIA requests also directly relate to the pending Utah litigation. Dkt. 7-3, ¶ 47. Other FOIA requests at issue concern Dinosaur National Monument and Glen Canyon National Recreation Area, both of which are at least partially located in Utah. *Id.* ¶¶ 132, 175; Dkt. 7-1, ¶ 5. Although one FOIA request concerns Gunnison National Park, which is located solely in Colorado, the controversy over that particular FOIA request involves a single document. Dkt. 1, ¶ 154, 165–166. Thus, this case primarily involves WWP's request for documents located in Utah, as well as how NPS employees in Utah search for documents and respond to FOIA requests.

Further, the Government has already filed the completed administrative record—consisting of more than 33,000 pages—in the Utah litigation and has thereby produced the underlying administrative records and/or other records that WWP originally sought through the Capitol Reef National Park FOIA requests. Dkt. 7, at 7 n. 3. As such, it is possible that the filing of the administrative record in the pending Utah litigation resolved or mooted some or all of the Capital Reef National Park FOIA requests which are the centerpiece of this suit. Assessing precisely how NPS's lodging of the administrative

MEMORANDUM DECISION AND ORDER - 12

record in the Utah litigation impacts the relevant Capitol Reef FOIA requests is best done by the District of Utah, which already has access to the relevant documents and experience with the litigants on the Capital Reef National Park issues. *Carpenter*, 2005 WL 1290678, at *2 (noting that where plaintiff's FOIA request sought discovery for a related case pending in another district, the district court in the related suit was "in the best position to evaluate the plaintiff's FOIA request").

In sum, Utah has a much greater connection to this suit than does Idaho and the interests of justice accordingly overcome WWP's original choice of forum in this District.

## V. CONCLUSION

For the foregoing reasons, the Court will exercise its discretion and grant NPS's Motion to Transfer.

## VI. ORDER

NOW, therefore, **IT IS HEREBY ORDERED**:

1. NPS's Motion to Transfer (Dkt. 7) is **GRANTED**;

2. The Clerk of the Court shall take the steps necessary to transfer this case to the United States District Court for the District of Utah.

DATED: December 8, 2021

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 13